IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> ASIA TAMARA BILLUPS, ) <br> ) <br> Defendant. ) | Case No. 4:24-cr-70-001 |

SENTENCING POSITION OF THE UNITED STATES

The United States by and through counsel, Assistant United States Attorney Peter G. Osyf, files this Position on Sentencing. For the reasons set forth *infra* and to be argued at sentencing, the United States respectfully recommends a downward variance from the restricted, applicable guidelines range of 960 months. Specifically, the United States recommends a total of 540 months' imprisonment – 240 months on Count 9; 240 months on Count 13; and 60 months on Count 14; all to be run consecutively to one another.

**Statutory Considerations**

The defendant pleaded guilty on April 14, 2025, to two counts of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), which each carry a mandatory minimum term of imprisonment of 15 years, and a maximum possible term of 30 years' imprisonment. The defendant also pleaded guilty to one count of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2), which carries a mandatory minimum term of imprisonment of 5 years, and a maximum possible term of 20 years' imprisonment. The Court may sentence the defendant to any term of years of imprisonment greater than 15 years up to 80 years.

1

**Impact of the Plea Agreement**

The parties entered into a plea agreement and the United States acknowledges the defendant's acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels pursuant to U.S.S.G. § 3E1.1(a). Additionally, because the defendant's timely notification of her intention to enter a plea of guilty, permitted the United States to avoid preparing for trial and permitted the United States and the court to allocate their resources efficiently, the United States filed a motion for an additional point reduction under U.S.S.G. § 3E1.1(b).

**Sentencing Guidelines Calculation**

The United States Probation Department prepared a pre-sentence report (PSR) which detailed the offenses of conviction and the characteristics of the defendant as they pertain to each count.

In calculating the offense level for Count Nine, Count Thirteen, and Count Fourteen – Production of Child Pornography, Production of Child Pornography, and Distribution of Child Pornography, respectively – the probation office assigned a base offense level of 32 under U.S.S.G. § 2G2.1(a). A 4-point enhancement applied pursuant to U.S.S.G. § 2G2.1(b)(1)(A) because offense involved a minor who had not attained the age of twelve years old (actual ages were 3 years for Jane Doe and 4 months for John Doe). An additional 2-point enhancement was added pursuant to U.S.S.G. § 2G2.1(b)(2)(A) because the offense involved the commission of a sexual act or sexual contact. Under U.S.S.G. § 2G2.1(b)(3), another 2 points were added to the defendant's offense level because the defendant knowingly engaged in distribution. Pursuant to U.S.S.G. § 2G2.1(b)(4), 4 additional points were attributed to defendant's offense level because the offense involved material that portrays sadistic or masochistic conduct or other depiction of violence or

portrays an infant or toddler. Another 2-point enhancement was added pursuant to U.S.S.G. § 2G2.1(b)(5) because the minors were otherwise in the custody, care, or supervisory control of the defendant. If for the purpose of producing sexually explicit material or for the purpose of transmitting such material live, the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct, an additional 2 points were added pursuant to U.S.S.G. § 2G2.1(b)(6)(B). These enhancements increased the defendant's adjusted offense level to 48. (PSR ¶¶ 29 - 50).

Next, the probation officer calculated the defendant's combined adjusted offense level of 50 using U.S.S.G. § 3D1.4. (PSR ¶¶ 51 - 54). After calculating the multiple count adjustment, the probation officer determined the defendant qualifies as a "repeat and dangerous sex offender against minors" pursuant to U.S.S.G. § 4B1.5(b)(1). (PSR ¶ 55). Thus, a 5-point enhancement elevated defendant's offense level to 55. Applying the 3-point reduction addressed above, the defendant's offense level was reduced to 52. However, pursuant to U.S.S.G. Chapter 5, Part A (comment n.2), in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43. Hence, the defendant's total offense level is restricted to 43.

The probation officer also calculated a criminal history level for the defendant. Because the defendant has no prior convictions, she received a total criminal history score of zero (0) which establishes a criminal history category of I pursuant to U.S.S.G. Chapter 5, Part A.

As a criminal history category I defendant with an offense level of 43, the defendant's properly calculated advisory guidelines range is Life. However, because a Life sentence exceeds the statutory maximum sentence authorized, here, defendant's properly calculated guideline

provision is restricted to 960 months.

**Statutory Sentencing Factors under 18 U.S.C. § 3553(a)**

The United States will now address the statutory factors that support its recommendation for downward variance from the restricted, applicable guidelines range of 960 months. Specifically, the United States recommends a total of 540 months' imprisonment – 240 months on Count 9; 240 months on Count 13; and 60 months on Count 14; all to be run consecutively to one another.

A. Nature of the Offense

Few, if any, criminal offenses so shock the consciousness of humanity as those involving the sexual exploitation of the most vulnerable and innocent members of society. The defendant's offense of conviction involves one of the most egregiously disturbing of these types of violations, the production of child sexual abuse material. Far more common are the only slightly less-chilling offenses of receipt, distribution, or possession of child pornography, of which defendant is also guilty here (distribution of child pornography). Acts where the common plea of those offenders is that the judicial system should show mercy because their crimes fall short of *directly* impacting victims like those who are "hands-on" offenders. Here, the defendant can make no such empty claim. In addition to directly feeding the demand of the multimillion-dollar international industry of child pornography, fueling the global epidemic of sex trafficking minors, by creating new content and distributing it, the offenses of conviction here will leave much deeper scars. The conduct of the defendant has completely and directly shattered the worlds of those for whom she should have cared and loved most, her family. The nature of the relationships with the victims here means the catastrophic repercussions from defendant's actions will negatively impact lives long after she is released from incarceration. The victimization of the children in defendant's life who

4

trusted her will suffer from her conduct in ways that can take a lifetime from which to recover, if ever at all.

The nature of the defendant's offense is abhorrent, creating lifelong damage in the innocent, and should weigh heavily upon the Court's consideration.

B.     History and Characteristics of the Defendant

The defendant is not even twenty years old. (PSR at 2 and ¶ 66). Born in Newport News, Virginia, the defendant grew up in Gloucester. (PSR ¶¶ 66 & 70). By all accounts, the defendant seems to have enjoyed a quality upbringing within a loving and supportive family, one in which she grew up in a "middle-income community without any criminal activity" with a loving extended family with "a strong faith-based foundation" to include four loving siblings. (PSR ¶¶ 66-68). Tragically, the defendant's father passed away in March of 2024 from heart issues, but she reported a "good relationship with her parents" and maintains such a relationship still today with her mother. (PSR ¶ 66). Seemingly, the *only* negative aspect of the defendant's life other than the instant offense and the untimely passing of her father, is a single, unsubstantiated, self-reported claim that the defendant's third grade elementary school nurse once "touched her inappropriately." (PSR ¶ 67). Notably, the defendant never mentioned this incident until she told her mother when the defendant was arrested for the instant offense. (PSR ¶ 67). The defendant has never been married nor does she have any children. (PSR ¶ 69).

Standing 5' 7" and weighing 280 lbs., the defendant reportedly suffers no physical health conditions. (PSR ¶¶ 71-72). Aside from his offenses of conviction, there is no evidence that the defendant suffers from any mental or emotional health issues either. (PSR ¶ 73). The defendant also "has never consumed alcohol, nor has she used any illegal drugs." (PSR ¶ 74).

The defendant graduated Gloucester High School in June 2024 and has an interest in photography. (PSR ¶¶ 75-76). Although very young, the defendant worked at Chick-fil-A for two years before her incarceration. (PSR ¶¶ 77-79).

The defendant has no criminal history.

Although seemingly a mitigating factor, the defendant's history and characteristics should trouble the Court. There is simply no excuse, nor even mere semblance of an explanation, for the defendant's conduct here. She is a smart, educated, capable young woman, grew up in a loving and supportive environment, is physically healthy, has no history of mental or emotional health issues, and cannot even blame substance abuse problems for her choices. And her choices are some of the worst imaginable. The defendant is not the victim here, and those who are the victims in this story, are suffering, and will continue to, indefinitely.

C.      Need for Just Punishment

There are few offenses more deserving of or in need for just punishment than defendant's offenses of conviction, particularly given not just the conduct, but the significant relationships with the victims. (PSR ¶¶ 13, 19, 34, & 45). The defendant did not just violate the law, but the bonds and trust of relationships that should have been sacred.

D.      Deterrence

The two types of deterrence at issue are general and specific. On the issue of general deterrence, the public must have confidence that the activities of the defendant are treated with the utmost seriousness. The public must look at the actions of the defendant – the production and distribution of child sexual abuse material of a baby and a toddler – and know that such conduct commands a significant punishment. Those inclined to consider committing crimes like those of the defendant must be made to pause and think of the consequences that follow. A substantial term

of imprisonment is warranted here to properly deter the public generally from committing such offenses.

As for specific deterrence, the United States is particularly troubled by this factor. The defendant's offense conduct is reprehensible, for certain, but the manner in which she lived her life contemporaneously to making and distributing these videos, and even once apprehended, is chilling. Similar offenders tend to live lives indicating an awareness of their socially unacceptable predilections – in relative solitude, in the shadows, generally quiet and anti-social. Defendant's behavior was, and continues to be, far different, brazenly dubious and deceptively crafted to deceive all those around her. The defendant was only caught because of an investigation into her codefendant some 350 miles away. The nature of the relationship and the conversations between the two codefendants here are alarming in themselves. (*See* SOF and PSR ¶¶ 13-19). Equally chilling and concerning is the defendant's callous behavior once caught. (*See* PSR ¶¶ 20 & 26). The defendant's double life fooled all those around her and no one suspected she could be capable of such atrocities, let alone carry on with her family as if it never happened.

The United States does not doubt the defendant feels badly for getting caught and the catastrophic impact this will have on *her* life. Perhaps this will be sufficient to specifically deter her in the future, but the seeming lack of contrition or awareness of the impact her actions will have on *other*'s lives is concerning.

E.  Need to Protect Society

The community is owed a duty by this Honorable Court and its government to be protected by those willing to prey upon the most vulnerable members of society. Defendant's behavior, both during and after the horrific acts, addressed above and in her PSR underscores the importance of this sentencing factor. The Court must prioritize protecting members of society from this conduct

7

over the inconvenience of an appropriately lengthy sentence upon the defendant, especially when those targeted members are young children. If the defendant was willing and able to victimize the children in this case, what could possibly dissuade her from harming another?

      F.      Avoiding Sentencing Disparities

The sentencing range for defendants of sexual crimes against children is vast and the Court should consider the advisory guideline range specific to this defendant as an appropriate starting point. Defendant's offense level, even after calculating her 3-point reduction for acceptance is quite literally off the sentencing chart. Her appropriate guidelines sentence is Life, but her range is statutorily restricted to 960 months. It is only because of the defendant's incredibly young age and the remarkable love and support system she has that the United States recommends a downward variance here. There is simply no excuse for her conduct and the absence of mitigating factors is alarming. Any sentence below the United States' recommendation would likely result in an unwarranted sentencing disparity here. The United States did not come upon its recommendation absent due consideration to the victims. A twenty-year sentence per production count, per victim, is only a fraction of the lifetime sentence the defendant and her codefendant have unjustly imposed upon Jane and John Doe. That is why the victim's counts should run consecutively. So too is a consecutive mandatory minimum sentence for the distribution of such content appropriate here. A total term of 540 months is about half of the properly calculated advisory guidelines range. While the sentence is still significant, the variance is uncharacteristically substantial as well and both are warranted, fair, just, and reasonable in this horrific case.

## Conclusion

The United States is primarily concerned with the safety of the community's children. For the safety of the community and children around the world who are innocent victims of an unconscionable industry perpetuated by the defendant's indirect and direct conduct, a term of 540 months' imprisonment – nearly a 50% downward variance from the *restricted* advisory guidelines range here – is sufficient but not greater than necessary to accomplish the goals of sentencing in this case.

Respectfully submitted,

ERIK S. SIEBERT
UNITED STATES ATTORNEY

By: _____/s/_____
Peter G. Osyf
Assistant United States Attorney
Virginia State Bar No. 86597
Attorney for the United States
United States Attorney's Office
One City Center
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
(757) 591-4000 Office
(757) 591-0866 Fax
peter.osyf@usdoj.gov

Certificate of Service

      I certify that on September 12, 2025, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system who will send notification of such filing (NEF) to all counsel of record.

By:     /s/    
Peter G. Osyf
Assistant United States Attorney
Virginia State Bar No. 86597
Attorney for the United States
United States Attorney's Office
One City Center
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
(757) 591-4000 Office
(757) 591-0866 Fax
peter.osyf@usdoj.gov